Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2628 | **DATE** | 8/30/2000 |
| **CASE TITLE** | Wiedersberg vs. City of Chgo et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 6-1) to dismiss is granted. Plaintiff's complaint is hereby dismissed without prejudice. Said dismissal will be with prejudice without further order of court as of October 30, 2000.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 31 2000 | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 00 AUG 30 PM 12: 24 | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVE WIEDERSBERG, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF CHICAGO and )<br>CAROLINE SHOENBERGER )<br>in her capacity of Consumer )<br>Services Commissioner, )<br>)<br>Defendants. ) | Case No. 00 C 2628<br><br>DOCKETED<br>AUG 3 1 2000 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. For the reasons set forth below, we grant Defendants' motion.

### BACKGROUND

This case asks whether a municipality may require taxicab drivers operating within its boundaries to offer their services and accept as a passenger anyone seeking transportation, even if this requires the drivers to travel into high-crime areas, thus imposing a potential hazard to the drivers' physical safety. Plaintiff Steve Wiedersberg ("Plaintiff") alleges that Defendant the City of Chicago ("the City")



enacted an ordinance mandating this course of action at the risk of being levied a significant monetary fine, in violation of his constitutional rights under the Fourteenth Amendment.

Our immediate attention is drawn to the sufficiency of Plaintiff's complaint, the factual allegations of which we must accept as true for the purposes of this motion. See <u>Bontkowski v. First National Bank of Cicero</u>, 998 F.2d 459, 461 (7th Cir.1993). In 1997, the Chicago City Council ("the Council") enacted a revised Section 28-28 of the Municipal Code of Chicago ("the Code") which provides:

> It is unlawful to refuse any person transportation to any place within the city or [certain] suburbs . . . in any taxicab which is unoccupied by a passenger for hire unless it is on its way to pick up a passenger in answer to a call for service or it is out of service for any other reason. When any taxicab is answering a call for service or is otherwise out of service it shall not be parked at a cabstand, and a white card bearing the words "Not for Hire" printed in black letters not less than two inches in height shall be displayed at its windshield. The public chauffeur license, public passenger vehicle license or both such licenses of any person who violates this section or any rule promulgated under this section five or more times within any 24 month period shall be subject to revocation.

Section 9-112-460 of the Municipal Code of the City of Chicago. This ordinance was originally passed by the Council in 1951 and has remained in effect since that time. While the Code originally provided for fines against violators ranging from $5-

$100, in December of 1997 the Council hiked the range to $25-$750,[1] spurring this suit.

Plaintiff is a taxicab driver and the President of the Chicago Professional Taxicab Drivers Association. At 3:40 a.m. on March 25, 2000, Plaintiff picked up a fare at 53rd Street and Calumet. The fare stole his cab at gunpoint and attempted to rob him as well. Plaintiff fought off the robber and ran into an adjacent building, where he telephoned the police. His cab was later recovered and his assailant was apprehended.

Plaintiff thereafter filed suit against the City and Defendant Caroline Schoenberger in her official capacity as the Chicago Consumer Services Commissioner. In his pro se complaint, Plaintiff initially seeks punitive damages and an order striking Section 9-112-460, claiming it violates his rights under the Fourteenth Amendment. On July 10, 2000, Defendants moved to dismiss, claiming Plaintiff has failed to allege any injury caused by the ordinances at issue and that he has failed to state equal protection or due process claims.

---

[1] The hike was packaged along with a host of other amendments to the public chauffeur and public passenger vehicle ordinances.

## LEGAL STANDARD

Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. See In re Chicago, Rock Island & Pac. R.R. Co., 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine wether subject matter jurisdiction exists. See United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996) (citing Bowyer v. United States Dept. of Air Force, 875 F.2d 632, 635 (7th Cir. 1989). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. See Kontos v. United States Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987). When a party moves for dismissal pursuant to Rule 12(b)(1), the nonmoving party must support its allegations with competent proof of jurisdictional facts. See Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673 (1942).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff

and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. See Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hartford Fire Insurance Co. v. California, 509 U.S. 764 (1993); Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). Nonetheless, to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. See Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992). It is with these principles in mind that we turn to the motion before us.

## ARGUMENT

### I

As an initial matter, we examine the validity of Plaintiff's claim against Defendant Schoenberger in her official capacity as a City employee. It is well settled that such suits are the same as a lawsuit against the City. Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3104-05 (1985). As such, they add nothing and

are properly dismissed with prejudice. Schmidling v. City of Chicago, 1 F.3d 494, 495 (7th Cir. 1993); McCollough v. City of Chicago, 971 F. Supp. 1247, 1249 (N.D. Ill. 1997). Consequently, we dismiss all claims against Schoenberger with prejudice.

## II

Plaintiff's suit contends that by prohibiting taxi drivers from refusing passengers based on their desired destination, the Ordinances violate his constitutional rights because they compel taxi drivers in Chicago to put their personal safety on the line in the performance of their jobs. In support of dismissal, the City claims that taxicabs have a monopoly on the transportation of passengers for hire and the denial of service to a section of the community would be to deny those residents the ability to move about the City, especially since high-crime areas usually are populated by low-income residents. Plaintiff argues that the City conveniently ignores the availability of bus and elevated train service, both of which are less costly than a typical cab fare. Given that the high-crime areas tend to be lower-income areas as well, with the exception of the criminal element, it is rather unlikely that the honest residents of these areas would be inclined to pay more money for the same basic function that they can receive from public transportation. Thus, Plaintiff argues that cabdrivers do not enjoy the monopoly described by the City.

Plaintiff's constitutional claim involves the Due Process Clause, which assures more than fair process, and the "liberty" it protects includes more than the absence of physical confinement. Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068-1069 (1992). The Clause also provides heightened protection from government interference with certain fundamental rights[2] and liberty interests. Reno v. Flores, 507 U.S. 292, 301-302, 113 S.Ct. 1439, 1446-1447 (1993). Courts, however, are justifiably cautious of expanding the concept of substantive due process, because doing so removes the issue from the legislative arena. Thus, we must proceed with extreme caution when requested to recognize a new right. Collins, 503 U.S., at 125, 112 S.Ct., at 1068; Moore v. City of East Cleveland, 431 U.S. 494, 502, 97 S.Ct. 1932, 1937 (1977) (plurality opinion).

Along a similar vein, legislative bodies must proceed cautiously when enacting legislation that may have an altruistic purpose. Care must be exercised with respect to its negative effects on some of its citizens. We need look no farther than Plaintiff's complaint to find a compelling example. The Council recognized that certain areas

---

[2]One such right is the freedom to loiter for innocent purposes, which includes the right to move from one place to another according to one's inclination. Papachristou v. Jacksonville, 405 U.S. 156, 164, 92 S.Ct. 839 (1972); Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, (1900). Blackstone identifies it as the right to move "to whatsoever place one's own inclination may direct." 1 W. Blackstone, Commentaries on the Laws of England 130 (1765).

of the City were not receiving satisfactory taxi coverage. Consequently, they passed the Ordinances at issue in an attempt to eliminate "transportation discrimination" based upon the individual's place of domicile. However, requiring cab drivers to venture into "high-crime" areas naturally carries with it an increased risk for the driver's health and life. This is more than some hypothetical risk, for the pages of Chicago's newspapers describe the murders of Chicago's taxi drivers with an all too chilling frequency.

When presented with motions to dismiss for both lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), it is the general practice that the 12(b)(1) motion should be addressed first. Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir.1987). Subject matter jurisdiction is a threshold requirement which must be satisfied before any decisions may be reached regarding the substantive merits of a claim on a 12(b)(6) motion. O'Connell Management v. Massachusetts Port Authority, 744 F.Supp. 368, 371 (D.Mass.1990). If the plaintiff fails to satisfy the constitutional requirements for standing, the court must dismiss the complaint for lack of subject matter jurisdiction. Hope, Inc. v. County of DuPage, Illinois, 738 F.2d 797, 804 (7th Cir.1984).

Plaintiff bears the burden of establishing the existence of a case or controversy to fulfill federal jurisdictional requirements. Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 1253 (1990). In order to have Article III standing, plaintiff[3] must show that she has suffered or is about to suffer a "demonstrable, particularized" injury. Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210 (1975). This injury must be real and immediate and not merely conjectural or speculative. City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, (1983); O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675 (1974).

In his complaint, Plaintiff does not allege that he is currently or will imminently be subject to a fine for refusal of service under the challenged Ordinances. The only injury complained about involved an attempted robbery of Plaintiff and an ensuing carjacking. This injury is not likely to be redressed by enjoining the Ordinances and cannot operate as a factor establishing a case or controversy. It is necessary for the Plaintiff to allege facts which establish a continuing injury from the City and the historical experience cited, regrettable in its

---

[3] It is unclear whether Plaintiff intends to assert a class of all cab drivers, but even so, class representatives must also plead and demonstrate that they have suffered a personal injury. See Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 1925 (1976). It is insufficient to merely allege that the named plaintiff purports to represent injuries suffered by other, unidentified class members. See Simon, 426 U.S. at 40 (quoting Warth v. Seldin, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207 (1975)).

horror, is simply inadequate. Lacking a case or controversy forecloses Plaintiff's ability to establish standing.

Plaintiff also challenges the ordinances as a violation of his due process rights. There is no question that the City has the power to regulate or prohibit the use of its streets for public gain, including the use of taxicabs. There is also little question that the goals of the ordinances are to insure full and equal access to taxi service to all of the City's citizens and to prevent discrimination based on geography or other fortuitous circumstances. Given these considerations, the Ordinances satisfy the rational basis test when evaluating these matters in a Constitutional sense.

That complying with the Ordinances creates an increased risk to the safety of taxi drivers is a modern-day reality, however, and this factor must necessarily be considered in the Constitutional analysis imposed upon the Court. The Ordinances reflect that increased risk. Under the Ordinances, a taxi driver is entitled to one or more hearings on an alleged violation in which evidence may be presented as to the reasons a taxi driver refused a fare. Unless and until the hearing process is shown to be a sham, or an exercise in continued futility, it cannot be said that its provision, along with other safety related promulgations, are legally inadequate to override the justification for the Ordinances. As a result, Plaintiff's allegations are legally insufficient to demonstrate any violations of his due process rights.

For the above reasons, Plaintiff's complaint is dismissed.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: August 30, 2000